## Meyersdale Borough v. Somerset Telephone Company, Appellant.

*Telegraph and telephone companies—Borough license—Poles and wires—Inspection—Unreasonable rate.*

A provision in an ordinance requiring an inspection of poles and wires of a telephone company three times weekly in a borough as

the basis on which to fix a license fee is such an abuse of discretion as to call for the intervention of the courts.

Where an ordinance of a borough fixes a fee of fifty cents per pole and fifty cents per mile of wire to be paid by a telephone company, and requires three weekly inspections of the poles and wires the court will reduce the fee to twenty cents per pole, and will require that the poles and wires need not be inspected regularly more than two or three times a year, with a special inspection after each severe wind, rain or snow storm.

The mere fact that the ordinance imposes certain duties upon the policemen does not enable the borough to collect from the telephone company the amount designated by the ordinance.

Argued April 10, 1917.    Appeal, No. 44, April T., 1917, by defendant, from judgment of C. P. Somerset Co., Equity Docket 1915, No. 7, in case tried by the court under the Act of April 17, 1905, P. L. 183, in the matter of Meyersdale Borough v. Somerset Telephone Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.    Affirmed.

Proceedings to fix license tax on poles and wires in a borough.

RUPPEL, P. J., found the facts to be as follows:

A dispute having arisen between these parties as to the amount of taxes to be paid by the defendant, the borough presented its petition under the Act of April 17, 1905, P. L. 183, asking the court to determine the amount to be paid.    An answer having been filed and considerable amount of evidence heard, the court finds the following

FACTS:

1. Prior to 1914, the borough assessed the defendant company at the rate of ten cents per pole for all its poles within the borough limits, and no charge was made for wires.

2. On the 14th of August, 1913, the Borough of Meyersdale enacted an ordinance providing, inter alia, as follows:

Sec. 1. That an inspection be made by the police department of the borough of all telegraph, telephone, electric light and other poles in the borough "three times a week or as often as may be required for proper and adequate supervision and inspection......In addition to the three times a week inspection it shall be the duty of the police department to inspect all of the aforesaid poles, etc., immediately after every severe wind, snow or rain storm."

Sec. 2. Imposes a tax of fifty cents per pole on each corporation owning or using poles.

Sec. 3. Imposes a tax of fifty cents per lineal mile for each mile of wire on said poles.

Sec. 4. Imposes twenty dollars per mile for each pipe line, conduit, etc.

3. Pursuant to the above ordinance, the policemen of Meyersdale, two of them were in the constant employ of the borough, did make regular examinations and inspections of the poles and wires in connection with their official duties as policemen. These inspections were simply made by viewing the lines as the policemen were passing on their beats and occasionally by making a test of poles with pick or other instrument to see whether decay was taking place in the ground; and the policemen made reports to the borough council at the meetings of council as follows: Jan. 13, 1914, February 3, 1914, March 3, May 5, June 2, August 4, September 1, October 6, November 3, December 2, January 5, 1915, February 2, March 2, April 6, May 4, June 1, July 6, and August 3, As a rule the policemen reported the poles and wires in good condition, occasionally attention was directed to a defective pole or a low wire, but in the same connection usually the statement is made, the company interested had made or was making repairs.

4. Had it not been for the inspection and examination imposed upon the policemen by the ordinance above cited, the borough could have dispensed with the services of one policeman, and all the duties of the police depart-

ment could have been cared for by one policeman, instead of two as required under the additional burdens imposed by the ordinance. The policemen were paid an average of $60 per month each.

5. To make the inspection and examination as specified by the borough ordinance, required two days' time on the part of the policemen for each inspection.

6. In August, 1914, the borough employed Simon Hostetler, an expert and experienced lineman, to make an inspection of all the poles and wires in the borough; this Hostetler did in four days and was paid therefor the sum of $11.

7. The Somerset Telephone Company has erected and is maintaining on the streets and alleys of said borough, 120 telephone poles and 136 miles of single wire.

8. The Electric Light, Heat and Power Company of Meyersdale has 205 poles and two miles of wire and one-seventh of a mile of pipe line. The Economy Telephone Company has 88 poles and 58 miles of wire. The Bell Telephone Co. has 40 poles and 1½ miles of wire. The Western Union Telegraph Co. has 7 poles, no wire. The Pennsylvania and Maryland Street Railway Co. has 116 poles and one and four-fifths miles of wire. The Sand Spring Water Co. has 7.7 miles of pipe line.

9. Payment of the assessment under the provisions of the ordinance on all the poles and wires in the borough would yield an annual sum of $554.30.

10. The defendant company has a central office in said Borough of Meyersdale with competent operators in charge, and breaks in the wires, obstructions or defects are usually indicated to the operators in said office immediately upon their occurrence; and the company has in its employ experienced and skilful agents to inspect and repair the wires and poles in said borough.

11. There is nothing in the location of the lines, character of the poles, and the like, to distinguish these poles and lines from those of a similar character in other localities. The ground upon which they are located is

practically level, and there is nothing in the location to require special attention or investigation.

12. There is no necessity for an inspection or examination of the poles and wires of the borough more than two or three times a year, and the cost of such inspection to the borough would not exceed ten cents per pole per annum.

The court made the order referred to in the opinion of the Superior Court.

*Error assigned* was the order of the court quoting it.

*C. W. Walker,* with him *Alexander King,* for appellant, cited: Delaware & Atlantic Telegraph & Telephone Co.'s Petition, 224 Pa. 55; New York & Penna. Tel. & Tel. Co. v. Coudersport Borough, 49 Pa. Superior Ct. 46; Kittanning Bor. v. American Natural Gas Co., 239 Pa. 210.

*W. Curtis Truxal,* for appellee, cited: Delaware & Atlantic Tel. & Tel. Co.'s Petition, 224 Pa. 55; New York & Penna. Tel. & Tel. Co. v. Coudersport Borough, 49 Pa. Superior Ct. 46; Dormont Borough v. West Liberty St. Ry. Co., 64 Pa. Superior Ct. 562; United Tel. & Tel. Co.'s Petition, 31 Pa. C. C. R. 481; Chester City v. Western Union Tel. Co., 154 Pa. 464; Taylor Borough v. Postal Tel. Cable Co., 202 Pa. 583.

OPINION BY KEPHART, J., November 19, 1917:

This is an appeal from an order of the court fixing the license fee to be collected by the Borough of Meyersdale for the inspection and regulation of poles and wires erected on the streets of the municipality. The order was made under the authority of the Act of April 17, 1905, P. L. 183, and its amendments. The legal principles discussed by the appellant have been frequently passed upon by this court and the Supreme Court and it is unnecessary to again discuss them. The borough

cannot, under the guise of a police regulation imposing a license fee, collect a tax for borough purposes.

There are about five hundred and eighty poles in Meyersdale. The ordinance fixed a fee of fifty cents per pole and fifty cents per mile of wire and required three weekly inspections of the poles and wires. The court reduced these charges to a fee of twenty cents per pole, and held that the poles and wires need not be inspected regularly more than two or three times a year, and specially after each severe wind-, rain-, or snowstorm. From the evidence the court did not abuse its discretion in determining the reasonableness of the inspection provided in the ordinance. The lower court finds: "The mere fact that the ordinance imposes certain duties upon the policemen does not enable the borough to collect from the telephone company the amount designated in the ordinance. There is no evidence in the case that sustains the position of the borough that an inspection of the poles and lines in the borough was required to be made three times each week. As well might the borough have said that such inspection should be made three times daily and then put on enough policemen to make the inspection. It had required an inspection to be made by a policeman three times a week, and under the testimony of the policemen and other witnesses for the borough, it shows that it required about two days to walk along the lines of all the companies in the borough in order to look at the poles and wires. Thus the triweekly inspections would take the whole of a policeman's time and what good would be accomplished? It sounds as though the borough was apprehensive that the poles and wires which were sound and in proper place on one day would on the second day thereafter likely be decayed or out of position or dangerous to the public. Such inspection never was contemplated by the act of assembly. Two or three inspections at most during a year would certainly be sufficient to guard the borough against any claims for negligence in having supervised the poles and wires of

the public service corporations within its limits, and particularly as the ordinance provides for special examinations or inspections immediately after any storms." A provision in an ordinance requiring an inspection of poles and wires three times weekly in a borough as the basis on which to fix a license fee for a utility company to pay was such an abuse of discretion as to call for the intervention of the court. Considering all the special circumstances that affect a license fee such as this, the court below did not abuse its discretion in fixing the fee at twenty cents per pole. Some of the poles and wires subject to the ordinance carry a high voltage. Their position with respect to other wires carrying less voltage may be such that in the interest of public safety a more particular inspection after rainstorms, high winds and sleet is necessary. The amount necessary cannot be determined with accuracy, but is amply provided for in the fee fixed by the court. It is assumed that the inspection will not be merely perfunctory, but will be an honest effort to ascertain whether the poles are sound and the wires in proper condition. If this is not done, and the service is not rendered for which the charge is made, the appellant has its remedy.

The decree of the court is affirmed and the appeal is dismissed at the cost of the appellant.